**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 08-181-DLB**

**WEINGARTNER LUMBER &**
**SUPPLY COMPANY, INC.**                                              **PLAINTIFF**


**vs.**              **MEMORANDUM OPINION AND ORDER**


**KADANT COMPOSITES, LLC, ET AL.**                          **DEFENDANTS**

*     *     *     *     *     *     *

Plaintiff, Weingartner Lumber & Supply Company, Inc. d/b/a Moore's Home Improvement Center, commenced this action against Defendants Kadant, Inc. ("Kadant"), Kadant Composites, LLC ("Kadant Composites"), LDI Composites, Co. ("LDI"), and Liberty Diversified Industries ("Liberty") in Campbell Circuit Court, alleging breach of warranty, negligence, and fraud claims after a manufacturing defect was discovered in Kadant Composites' GeoDeck decking composite product, which allegedly caused it to deteriorate and rendered the product unsafe for use.  To hold Kadant liable, Plaintiff seeks to pierce the corporate veil of Kadant Composites, and alleges successor-in-interest liability against LDI and Liberty in light of LDI's purchase of Kadant Composites' assets on October 27, 2005.

This matter is presently before the Court on Defendants Kadant, Inc., LDI Composites, and Liberty Diversified Industries' Motion for Summary Judgment. (Doc. #46). The motion has been fully briefed (Docs. #47, 48), and the matter is now ripe for review. For the reasons set forth below, because Plaintiff has failed to present evidence sufficient

to pierce the corporate veil or to warrant application of successor-in-interest liability, Defendants Kadant, Inc., LDI Composites, and Liberty Diversified Industries' Motion for Summary Judgment (Doc. #46) is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Weingartner Lumber and Supply Co., Inc., a Kentucky corporation, does business as Moore's Home Improvement ("Moore's"), which operates a lumber and home material supply business in Fort Thomas, Kentucky.  Moore's purchased a composite decking product marketed under the brand name, GeoDeck, for resale to its customers from Universal Forest Products Eastern Division, Inc. ("Universal Forest Eastern").[1]  The GeoDeck product was manufactured by Defendant Kadant Composites, a Delaware limited liability company with its principal place of business in Bedford, Massachusetts.  Kadant, a Delaware corporation with its principal place of business in Westford, Massashusetts, is the parent company of Kadant Composites.

According to the Second Amended Complaint,  filed with this Court on May 4, 2009, Kadant and Kadant Composites marketed GeoDeck as a "longer-lasting and cheaper alternative to traditional treated wood decking and construction materials" and provided a 20-year written limited warranty on all GeoDeck products.[2]  The warranty provides "comprehensive coverage against splintering, splitting, rot or decay, and termite damage" and limits liability to replacement or repair of the defective product or a refund of the original

---

[1]Universal Forest Products, Inc. and Universal Forest Products Eastern Division, Inc. are no longer parties to this action.  On November 11, 2009, Plaintiff dismissed its claims against the aforementioned parties with prejudice.

[2]Defendants expressly deny in their Motion for Summary Judgment that Kadant was involved in the manufacturing, marketing or warranting of GeoDeck products.  (Doc. #46, at 5).  This denial is supported by the affidavit of Sandara L. Lambert, Vice-President, General Counsel and Secretary of Kadant, Inc.

purchase price, which is the "sole and exclusive remedy" provided for any claim involving defects in GeoDeck products.   (Doc. #46, Ex. 2). The warranty expressly excludes incidental and consequential damages, and all other express or implied warranties, including merchantability and fitness for a particular purpose.   Furthermore, the warranty represents that "Kadant Composite Lumber" as the manufacturer of GeoDeck products, is issuing the warranty.[3]  (Doc. #46, Ex. 2).

On August 19, 2005, Kadant issued a recall of GeoDeck materials sold nationwide between April 2002 and July 2005, because the material allegedly had design and/or manufacturing flaws that caused them to deteriorate, rendering them unsafe to use.[4] Moore's purchased GeoDeck materials in its regular course of business between 2001 and 2007, clearly having purchased materials during the period covered by the recall.  Moore's received complaints from customers that decks utilizing the Geodeck product were "brittle fracturing, and dangerous to walk on."  Moore's inspected its customers' decks built with Geodeck materials and found them unsafe, replacing and repairing the defective decks at its own expense.

On October 27, 2005, approximately two months after issuing the recall, Kadant Composites and Kadant sold its composite decking and roofing business to Defendant LDI

---

[3]To activate the warranty, the following was required: "To obtain replacement or refund, the original owner must submit its claim together with this warranty certificate, the original purchase invoice indicating the date of purchase, pictures of the defective GeoDeck products, and a detailing written description to Kadant Composites Inc., 8 Alfred Circle, Bedford, MA 01730."  (Doc. #46, Ex. 2).  Kadant Composites, LLC was originally incorporated as Kadant Composites, Inc., and was converted to a Delaware limited liability company in 2005.

[4]In its Response to Defendants' Motion for Summary Judgment, Plaintiff specifically alleges the manufacturing defect was due to "excessive oxidation in the manufacturing stage that affected the integrity of the plastic used in GeoDeck products." (Doc. #47, at 2).  The SEC filings Plaintiff attached to its Response also indicate that the manufacturing defect was excessive due to oxidation.  (Doc. #47, Ex. 2).

Composites, a Minnesota corporation.  The Asset Purchase Agreement was between LDI,

Liberty, Kadant, and Kadant Composites; Liberty is the parent company of LDI and is also

a Minnesota corporation.  The agreement represents that LDI and Liberty would assume

certain liabilities of Defendants Kadant Composites and Kadant, but that the Seller (i.e.

Kadant Composites) would retain any obligations related to breach of warranty.  The Asset

Purchase Agreement further indicates that "Kadant and Seller will deposit Three Million

Five Hundred Thousand Dollars ($3,500,000.00) with the Escrow Agent to be held in a

separate and distinct escrow account from the Escrow Amount ("Warranty Fund"),"[5] as a

warranty reserve for GeoDeck product claims.[6] (Doc. #46, Ex. 3).  Approximately two years

later on September 30, 2007, the Kadant Defendants terminated the warranty program and

ceased operations.[7]

---

[5]Administration of the Warranty Fund is governed by the following provision from the Asset Purchase Agreement between Defendants:

> The Warranty Fund shall be administered by and available to the Buyer to cover Warranty Claim Costs and Expenses (defined below) related to the replacement of products produced by Seller prior to Closing and claimed by purchasers ("Claimants") of those products to be faulty, defective or otherwise unacceptable ("Warranty Claims").  For a period of the earlier of (A) five (5) years following the Closing Date or (B) the date that the Warranty Fund is exhausted ("Buyer's Administration Period"), Buyer shall administer Warranty claims and Buyer may withdraw funds from the Warranty Fund to pay for Warranty Costs and Expenses...The Warranty Fund may be used only for the costs and expenses of remedying Warranty Claims with no right of setoff against any claims for indemnification or other obligations of Seller to Buyer hereunder.  If, during Buyer's Administration Period, a Claimant has notified Seller that Buyer has not resolved the Claimant's Warranty Claim to the satisfaction of the Claimant, Seller may take reasonable and necessary action to resolve the Warranty Claim and Seller may withdraw funds from the Warranty Fund to pay for Warranty Costs and Expenses incurred in taking such action.

(Doc. #46, Ex. 3).

[6]A letter attached to the Complaint represents the reserve was established from funds received through sale of the assets.

[7]A letter attached to the Complaint states "amounts owed to distributors, homeowners and others ... was higher than we anticipated; ... we no longer have funds available to pay or process warranty claims; ... assets were sold to an unrelated party in 2005 and the proceeds ... were used to administer the warranty program and pay claims and other expenses; ... as you are aware, the decks of these deck owners are potentially unsafe and should not be used until they are replaced."

## II.    ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not a genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce evidence showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

5

B.      **Kentucky Law Applies**

Defendants, in their motion for summary judgment, are uncertain about whether Massachusetts[8] or Kentucky law applies to this diversity action; accordingly, Defendants argue that applying either state's law, Defendants prevail.  Having reviewed the parties' briefs and the applicable law on this issue, Kentucky law applies to determine whether to pierce the corporate veil and whether successor liability attaches.

A federal court sitting in diversity applies the choice of law rules of the forum state to determine which jurisdiction's substantive law controls.  *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001); *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000).  Furthermore, this Court is mindful that "Kentucky's conflict of law rules favor application of its own law whenever it can be justified."  *Johnson v. S.O.S. Transport, Inc.*, 926 F.2d 516, 519 n. 6 (6th Cir. 1991).

Kentucky no longer strictly applies a *lex loci*–law of the place–choice of law rule, but instead applies a "sufficiency of interests" or "sufficiency of contacts" test, which still favors applying Kentucky law when the case is to be tried in a Kentucky forum.  *Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. 1968); *Wessling v. Paris*, 417 S.W.2d 259, 260-61 (Ky. 1967).  Specifically, Kentucky articulates two different choice of law rules with respect to contract and tort actions.  Kentucky precedent dictates that the "any significant contacts" test applies to tort actions, whereas the Restatement's "most significant contacts" test applies to contract disputes.[9]  *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009) (citing

---

[8]Kadant and Kadant Composites' principal place of business.

[9]The warranty at issue in this case does not contain a forum-selection clause–which could change the choice of law analysis–rather, the warranty merely states "[l]aws from time to time in force in certain jurisdictions may imply warranties that cannot be excluded or can only be excluded to a limited extent.  This

*Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972)); *see also Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982); *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996).

Although Kentucky applies §188 of the *Restatement (Second) of Conflict of Laws* in contract actions, which provides the state with "the most significant relationship to the transaction governs," the test has been interpreted and applied such that Kentucky law governs if it has the "greater interest" in the outcome of the litigation.  *See Wallace*, 223 F.3d at 393; *Breeding*, 633 S.W.2d at 719.  Accordingly, the Kentucky Supreme Court has held that Kentucky law will apply to a contract issue if there are sufficient contacts and there are no overwhelming interests to the contrary.  *Breeding*, 633 S.W.2d at 719.

In the instant case, piercing the corporate veil and successor liability are not–standing alone–causes of action.  Rather, both are theories of liability that deviate from traditional requirements of privity or the general rule of limited liability in order to hold otherwise inaccessible entities liable.  This Court, therefore, must look to the underlying actions to determine the appropriate choice of law rule in the case of veil-piercing or successor liability.  In this case, Plaintiff's claims against Defendants Kadant, LDI, and Liberty sound in both contract and tort.  Despite the difference in rules, Kentucky law will apply to Plaintiff's contract and tort actions alike.

Considering Moore's Home Improvement is a Kentucky Corporation with its principal place of business in Fort Thomas, Kentucky, and that Moore's received and sold its customers the allegedly defective GeoDeck product in Kentucky, sufficient contacts exist

---

warranty shall be read and construed subject to any such statutory provisions."  (Doc. #46, Ex. 2).

to justify applying Kentucky law to the instant action. *Breeding*, 633 S.W.2d at 719.
Kentucky, moreover, has the greatest concern for the issues raised in this litigation
because Plaintiff is a Kentucky corporation that has suffered loss as a result of a foreign
manufacturer that distributes products nationwide.[10] *Id.* (Kentucky Supreme Court held
action for benefits under accidental death policy issued by a car rental franchise to renter
was governed by Kentucky, not Delaware, law where renter was a Kentucky resident and
franchisee was a Kentucky corporation. The only contact with Delaware was the delivery
of the master insurance policy to the Delaware corporate office of the car rental company,
which was a nationwide corporation with franchises scattered among the fifty states.).
Consequently, the substantive law of Kentucky applies to the instant action.

### C.      The Corporate Veil Will Not be Pierced to Hold Kadant Liable

Plaintiffs argue the Court should pierce the corporate veil and impute liability to
Defendant Kadant as the parent corporation of Kadant Composites. Specifically, Plaintiff
asserts that veil-piercing is appropriate in this case because Kadant Composites existed
as a mere instrumentality, or in the alternative, as the alter ego of Kadant. Kadant argues
that piercing the corporate veil is an extreme remedy that is not warranted due to the lack
of affirmative evidence tending to show pervasive control of a subsidiary by a parent. To
determine whether the Defendants are entitled to judgment as a matter of law on the

---

[10]The record does not indicate where Plaintiff purchased the GeoDeck materials, although, it does
indicate the materials were purchased from Universal Forest Products, Inc. Eastern Division, which is a
Michigan Corporation with its principal placed of business located in Illinois. Additionally, the complaint does
not make clear whether the decks replaced or repaired were located in Kentucky to service Kentucky
residents. However, the record reveals more significant contacts occurred in Kentucky than in Massachusetts,
which it seems has in interest in the litigation only to the extent that **two** of four remaining defendants have
their principal place of business located in Massachusetts.
        Moreover, apart from asserting that Massachusetts is Kadant and Kadant Composites' principal place
of business, Defendants fail to make an argument as to why Massachusetts has a greater interest in the
outcome of this litigation. (Doc. #46).

breach of warranty, negligence, and fraud claims asserted, the Court must first ascertain whether it is appropriate to pierce the corporate veil.

As an initial matter, the Court acknowledges that piercing the corporate veil is not a cause of action in and of itself; instead, it is merely a means by which a complainant can "reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation." *Obipektin AG v. Falkon Int'l, Inc.*, No. 3:08-cv-380, 2010 WL 411501, at *4 (E.D. Ky. Jan. 29, 2010) (citing 1 Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (Perm. ed. 1999)).   Accordingly, this Court must determine whether the Plaintiff has raised a genuine issue of material fact with regard to the issue of veil-piercing.

It is well-established that a parent corporation will generally not be held liable for the conduct of its subsidiary.  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Under Kentucky law, the corporate veil should be pierced only "reluctantly and cautiously."  *White v. Winchester Land Dev. Corp.*, 584 S.W.2d 56, 62 (Ky. Ct. App. 1979).  Courts are especially reluctant to pierce the corporate veil in contract cases because a voluntary creditor is typically in a position to protect itself.  Unless the corporate entity acted in such a way as to mislead a contract creditor there is really no need to protect them; unlike tort claimants they choose to deal with the corporation.  *Secon Serv. Sys., Inc. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 415-16 (7th Cir. 1988); *cf. White*, 584 S.W.2d at 61.

In *White*, the Kentucky Supreme Court articulated three theories of veil-piercing liability: (1) the instrumentality theory; (2) the alter ego theory; and (3) the equity formulation.  *Id.* at 61 (citing Rutheford B. Campbell, Corporate Shareholders: Myth or Matter-of-Fact, 63 Ky. L.J. 23, 33 (1975)).  Regardless of which veil-piercing theory is

9

applied the following factors are always considered in assessing whether to pierce the corporate veil:

> (1) undercapitalization; (2) a failure to observe corporate formalities; (3) nonpayment or overpayment of dividends; (4) a siphoning of funds by the dominant shareholder(s); and (5) the majority shareholders having guaranteed corporate liabilities in their individual capacities.

*Id.* at 62.  Because veil-piercing cases, however, "do no lend themselves to strict rules and prima facie cases," a court need not find that all five factors weigh in favor of piercing to ignore the corporate form.  *Id.  See also United States v. WRW Corp.*, 778 F.Supp. 919, 924 (E.D. Ky. 1991) (finding no siphoning off of funds but imposing liability where the remaining factors were present).

In this case, Plaintiff relies on both the mere instrumentality and alter ego theories in its attempt to pierce the corporate veil of Kadant Composites and reach the parent company, Kadant.  Under Kentucky law, the instrumentality theory requires a plaintiff to establish the following elements before a court will find veil-piercing appropriate: (1) that the corporation was a mere instrumentality of the shareholder; (2) that the shareholder exercised control over the corporation in such a way as to defraud or harm the Plaintiff; and (3) that a refusal to disregard the corporate entity would subject Plaintiff to unjust loss.  *White*, 584 S.W.2d at 61.  Under an alter ego theory the corporate entity should not be disregarded unless there is (1) "such unity of ownership and interest" that the separate personalities of the corporation and its owner cease to exist, and (2) "the facts are such that an adherence to the normal attributes...of separate corporate existence would sanction a fraud or promote injustice."  *Id.* at 61-62.

10

Under either theory, Plaintiff has failed to present sufficient evidence to avoid summary judgment on the issue of veil-piercing.  The only affirmative evidence Plaintiff presents to support its mere instrumentality theory is Kadant's update to its quarterly report (i.e. the 8-K filing), which indicates that it was Kadant's board of directors who decided to approve a plan to sell Kadant Composites.[11]  That Kadant's board of directors determined its composite subsidiary was no longer profitable and should be sold is insufficient to establish the subsidiary was a mere instrumentality of Kadant.  The decision to sell an unprofitable subsidiary is a common business decision that fails to establish the parent's control over its subsidiary was exercised in a manner to defraud the Plaintiff.  The record is completely devoid of any of the essential elements of fraud: (1) material representation, (2) falsity, (3) scienter, (4) reliance, (5) deception, and (6) injury.  *White,* 584 S.W.2d at 61 (Kentucky Court of Appeals refused to find company was a mere instrumentality without first showing the essential elements of fraud, such that the second element of the instrumentality theory could be established).  *See also CMI, Inc. v. Intoximaters*, Inc., 918 F. Supp. 1068, 1086 (W.D. Ky. 1995) (sets out the elements of fraud).  Plaintiff's evidence is plainly insufficient to establish that Kadant Composites was a mere instrumentality of Kadant.

Similarly, Plaintiff's evidence fails to establish Kadant Composites was the alter ego of its parent, Kadant.  In support of the alter ego theory of liability, Plaintiff merely *asserts* that Kadant Composites was "completely controlled" by its parent company, and further that

---

[11]Plaintiff asserts that Kadant's Board is the decision-making body that decided to sell Kadant Composites, however, the SEC filings Plaintiff cites merely indicate that Kadant's board of directors "approved a plan and management committed to sell the composite building products business."  (Doc. 47, Ex. 2).

"Defendants' SEC filings are replete with examples of Kadant and K[adant] Composites acting in unity."  To support these assertions, Plaintiff again directs this Court to the October 8-K filing where Kadant's Board approved a plan to sell Kadant Composites and references the November 2005 quarterly report, to show that Kadant was responsible for estimating and providing funds for future warranty claims brought against Kadant Composites.  Plaintiff's tangential references to the unity of ownership throughout Kadant's SEC filings, in the absence of more, simply fail to indicate such unity of ownership that Kadant Composites could properly be said to be the alter ego of its parent company.

Unity of ownership such that corporate formality is nonexistent requires that the corporations be so close that they are essentially the same entity; "control of a corporation by the persons sought to be held liable is not alone a sufficient basis for denial of entity treatment."  *White*, 584 S.W.2d at 61 (citing *Poyner v. Lear Siegler*, *Inc.*, 542 F.2d 955, 958 (6th Cir. 1976)); *see also Louisville/Jefferson County Metro v. Hornblower Marine Servs.*, No. 3:06-cv-348, 2009 WL 3231293, at *10 (W.D. Ky. Oct. 2, 2009).  There is nothing in the record to indicate that corporate formalities were not strictly observed.  The two companies had separate offices, directors, employees, and engaged in completely different business activities.  Plaintiff has failed to rebut those facts.  Specifically, Kadant supplies a range of products for the global papermaking and paper recycling industries, such as stock-preparation equipment, water-management systems, and paper machine accessories, while Kadant Composites manufactures composite building materials produced from recycled fiber and plastic.

More generally, Plaintiff alleges that Kadant undercapitalized its subsidiary, failed to observe corporate formalities, and siphoned off funds from Kadant Composites.

12

However, such claim is wholly unsubstantiated by the record. First, Plaintiff wrongly equates warranty funding with capitalization. Plaintiff contends the insufficiency of Kadant Composites' $3.5 million warranty fund establishes undercapitalization. The existence of an inadequate warranty fund, however, does not equate to undercapitalization of a business. Capitalization refers to the paid-in capital used to incorporate and start a business; thus, a company is capitalized before it begins doing business. There is nothing in the record to indicate that Kadant Composites was undercapitalized when formed. To the contrary, the business operated profitably for years until the unforseen circumstance of a defective product line caused the company to operate at a loss. Were every new company expected to foresee, and thereby account for, potential catastrophic loss as a prerequisite to formation, small business start-up would be virtually nonexistent.

Plaintiff again points to Kadant's decision to approve a plan to sell Kadant Composites as evidence that the parent failed to observe corporate formalities. Considerations in determining this factor include: stock issuance, fiscal separateness between the two corporations, and the observance of proper meeting and record-keeping procedures. *See WRW Corp.*, 778 F. Supp. at 923-24. Plaintiff fails to present evidence controverting Defendants' claim that Kadant and Kadant Composites operated out of separate offices, maintained separate directors, officers, and employees, and engaged in separate businesses. As such, Plaintiff's claim that Kadant and Kadant Composites failed to adhere to corporate formalities lacks merit.

Defendants further maintain that at no time did Kadant and Kadant Composites commingle assets. Plaintiff, however, urges this Court to draw the inference that Kadant improperly siphoned off funds and retained the subsidiary's profits because Kadant

13

Composites reported a loss after selling all of its assets.  Defendants counter, stating that

the profits from the sale of the business were "allocated to the operations and obligations

of Kadant Composites including the process and payment of warranty claims."  Plaintiff fails

to introduce any affirmative evidence that Kadant improperly retained its subsidiary's profits

without which this Court finds summary judgment appropriate.[12]

### D.      LDI and Liberty are Not Liable Via Successor Liability

Plaintiff seeks to hold LDI and Liberty liable for the warranty based claims asserted

against Kadant Composites based on a successor-in-interest theory of liability.  Defendants

argue that successor-in-interest liability is inapplicable because neither LDI nor Liberty

agreed to assume any liabilities of Kadant Composites.

As a general rule, Kentucky law prohibits successor liability.  *Pearson ex rel. Trent*

---

[12]One final matter deserves comment.  In their Reply Defendants contend this Court should deem inadmissible the exhibits attached to Plaintiff's Response, arguing those exhibits are unauthenticated.  As previously discussed, Plaintiff's exhibits consist of public filings downloaded from the U.S. Securities and Exchange Commission.  Defendants' argument, as presented, lacks merit.

This Court agrees with Defendants that evidence submitted in opposition to a motion for summary judgment must be admissible.  *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997); *Monks v. Gen. Elec. Co.*, 919 F.2d 1189, 1192 (6th Cir. 1990).  "[I]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."  *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  However, Defendants fail to articulate in what manner publicly filed records maintained by a U.S. government agency are "unauthenticated" and therefore inadmissible.

In this internet, tech-savvy age, accessing official records from government websites is commonplace.  Publicly maintained records downloaded from a government website would likely be self-authenticating under Fed. R. Evid. 902(5). The rule provides:

**Rule 902. Self-authentication** – Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
(5) **Official publications.**  Books, pamphlets, or other publications purporting to be issued by public authority.

The documents presented do indicate assurances of authenticity.  For example, each document downloaded bears the U.S. Securities and Exchange Commissions web address, the date and title of each document, and the date and time the document was accessed and downloaded.  Accordingly, the Court considered the exhibits attached to Plaintiff's Response in concluding that no genuine issue of material fact exists with respect to piercing the corporate veil.

*v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002).   However, there are four exceptions to the general prohibition against successor-in-interest liability.   A corporation selling its assets may pass on its debts and liabilities to a purchasing corporation where: (1) the buyer expressly or impliedly agrees to assume the seller's debts; (2) the transaction amounts to a consolidation or merger between buyer and seller; (3) the buyer is merely a continuation of the seller; or (4) the transaction is entered into fraudulently in order to escape liability of the seller's debts.   *Conn v. Fales Div. of Mathewson Corp.*, 835 F.2d 145, 146 (6th Cir. 1987); *Pearson*, 90 S.W.3d at 49.   Plaintiff contends that Kadant sold Kadant Composites to LDI and Liberty for the specific purpose of avoiding liability, implicating exception four under Kentucky law.[13]

Plaintiff has failed to present sufficient evidence to avoid summary judgment on the issue of successor liability.   In claiming a genuine issue of material fact exists regarding successor liability, Plaintiff once again directs this Court to an SEC filing by Kadant.   More specifically, to Kadant's Quarterly Report filed with the SEC.   Plaintiff cites page nineteen of the quarterly report, which states the decision to sell Kadant Composites was made "after making a determination that the business no longer aligned with the Company's long-term strategy," and further on page twenty-one that "[Kadant Composites] experienced warranty issues that affected its profitability in 2003 and 2004."   From these two disclosures

---

[13]Plaintiff does not argue that LDI and Liberty assumed the debts and liabilities of Kadant Composites. Rather, it acknowledges that after the sale of Kadant Composites' assets, liability for the warranty claims would remain with Kadant Composites.  The Asset Purchase Agreement specifically incorporates the following provision under the heading, Retained Liabilities:

> Seller agrees that, other than the Assumed Liabilities, all liabilities, commitments and obligations of Seller (the "Retained Liabilities") are not assumed by Buyer and shall be paid, performed and discharged by Seller as of or after the Closing Date as they become due, including...liability for breach of contract [and] breach of warranty.

(Doc. 46, Ex. 3).

Plaintiff mounts its claim of fraud, specifically arguing that Kadant sold its subsidiary's assets precisely because it knew Kadant Composites' profitability would cease based on the increase in warranty claims filed.  Plaintiff fails, however, to introduce any affirmative evidence rebutting Defendants' evidence that Kadant, LDI, and Liberty did not act fraudulently or for the purpose of evading liability when it entered into the Asset Purchase Agreement. Plaintiff merely saying they did does not make it so.

The record instead reveals a bona fide purchase transaction between two composite companies.  LDI paid valuable consideration for Kadant Composites' assets, requiring it to deposit a portion of the sale proceeds in escrow for the payment of warranty claims like the one brought by Plaintiff: significant facts that mitigate against a finding of fraudulent conveyance.  In the absence of a contractual obligation or a showing of fraud, where the parties have engaged in a bona fide transaction supported by adequate consideration, Kentucky law forbids successor liability.  *Conn*, 835 F.2d at 146 (citing *Am. Ry. Express Co. v. Commonwealth*, 228 S.W. 433, 441 (Ky. 1920)).

Furthermore, there is no basis whatsoever to hold Liberty liable under a theory of successor liability.  None of the four exceptions recognized under Kentucky law are applicable to Liberty: (1) Liberty was not a buyer under the Asset Purchase Agreement and therefore could not assume the liabilities of Kadant Composites; (2) there was no transaction between Liberty and Kadant Composites that could amount to a merger; (3) Liberty was not the buyer and therefore could not be a mere continuation of the seller; and (4) as stated previously, nothing within the record indicates that the transaction between the remaining Defendants was entered into fraudulently or for the purpose of evading liability.  Accordingly, summary judgment in favor of LDI and Liberty is appropriate.

16

## III.    CONCLUSION

Because piercing the corporate veil would be inappropriate and the facts do not warrant applicability of successor-in-interest liability, Defendants are entitled to summary judgment.  It is unnecessary, therefore, to reach the merits of whether a genuine issue of material fact exists with respect to the breach of warranty, negligence, and fraud claims asserted.  Summary judgment is appropriate on all of these claims as the corporate veil cannot be pierced to reach Kadant, and similarly, because successor-in-interest liability cannot be imposed on either LDI or Liberty.

Accordingly, **IT IS ORDERED** that Defendants Kadant, Inc., LDI Composites, Co., and Liberty Diversified Industries' Motion for Summary Judgment (Doc. #46) is hereby **GRANTED.**

This 16th day of March, 2010.



Signed By:

*David L. Bunning*   DB

United States District Judge

G:\DATA\Opinions\Covington\2-08-181-MOO granting MSJ.wpd